IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAYUGA NATION,<br><br>    *Plaintiff*,<br><br> v.<br><br>KATHLEEN C. HOCHUL, in her official capacity as Governor of New York;<br><br>LETITIA A. JAMES, in her official capacity as New York State Attorney General;<br><br>MARIE THERESE DOMINGUEZ, in her official capacity as Acting Commissioner of the New York State Department of Transportation;<br><br>THOMAS P. DiNAPOLI, in his official capacity as Comptroller of the State of New York; and<br><br>THE NEW YORK STATE THRUWAY AUTHORITY,<br><br>    *Defendants*. | Case No. _____<br><br><br><br>**COMPLAINT** |

## COMPLAINT

Plaintiff Cayuga Nation (the "Nation"), as and for its Complaint against the above-named Defendants, hereby alleges as follows:

### NATURE OF THE ACTION

1. This is an action to enjoin New York State officers and the New York State Thruway Authority from continuing violations of federal law protecting the Nation's 64,015-acre federally-recognized reservation in the Finger Lakes Region of New York (the "Reservation"), and to bring into compliance with federal law the ongoing public use of, and toll collection for,

1

the portion of the New York State Thruway (the "Thruway"), Interstate 90 (a toll road), that runs over and across the Nation's Reservation.

2. The official-capacity Defendants are named pursuant to *Ex parte Young*, 209 U.S. 123 (1908) and its progeny, which allow declaratory and injunctive relief against state officers in their official capacities to stop ongoing violations of federal law, notwithstanding the immunity afforded to States under the Eleventh Amendment of the United States Constitution, as a State does not have, and therefore cannot confer on its individual officers, any authority to violate federal law.

3. Defendants' continued operation of the Thruway through the Nation's Reservation without a valid right-of-way approved by appropriate federal officials violates the federal treaty recognizing the Reservation and protecting it against alienation. Treaty of Canandaigua, art. II, Nov. 11, 1794, 7 Stat. 44, 45 ("The United States acknowledge the lands reserved to the . . . Cayuga Nation[] . . . and called their reservation[], to be their property; and the United States will never claim the same, nor disturb them or either of the Six Nations, nor their Indian friends residing thereon and united with them, in the free use and enjoyment thereof; but the said reservation[] shall remain theirs, until they choose to sell the same to the people of the United States, who have the right to purchase."); U.S. Const. art. VI, cl. 2 ("all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land[.]").

4. Federal law comprehensively regulates rights-of-way across Indian lands such as the Reservation, and Defendants' operation of the Thruway over and across the Nation's Reservation is an ongoing violation of federal law. *E.g.*, 25 U.S.C. § 323; 25 C.F.R. Ch. I, Subch. H, Pt. 169.

5. The Nation therefore brings this action seeking declaratory and injunctive relief to require the following. *First*, that Defendants (with the exception of the Comptroller) obtain a valid right-of-way for the portion of the Nation's Reservation on which the Thruway is situated, so as to bring continued public use of, and benefit from, those Indian lands into compliance with federal law on terms that will equitably compensate the Nation pro rata for future use of its lands; *or*, in the alternative, that Defendants (with the exception of the Comptroller) be enjoined from collecting tolls going forward for the portion of the Nation's Reservation on which the Thruway is situated without first obtaining a valid right-of-way. *Second*, that the Comptroller of the State of New York segregate and hold in escrow any future toll monies collected on the Thruway that are fairly attributable to the portion of the Thruway operated on and through the Nation's Reservation, in violation of the Nation's federally-protected rights until such time as the other Defendants obtain a valid right-of-way.

6. The Nation further seeks a declaration that Defendants (other than the Comptroller) are violating federal law by not obtaining a valid right-of-way for the portion of the Thruway running over and across the Nation's Reservation lands, and that some of the toll monies being collected for the Thruway and being deposited with the Comptroller on a continuing basis are derived from this violation of federal law.

7. Such relief will bring continued public use of, and public benefit from, the Nation's Reservation into compliance with federal law, on terms that will equitably compensate the Nation pro rata for future use of its Reservation.

## PARTIES

8. Plaintiff Cayuga Nation is a federally recognized Indian nation. *See* Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs, 88

Fed. Reg. 54,654, 54,655 (Aug. 11, 2023).  The Federal Government recognizes the Nation as the same entity with which it entered the Treaty of Canandaigua, 7 Stat. 44.  The Nation is governed by the Cayuga Nation Council.

9. Defendant Kathleen C. Hochul is the Governor of the State of New York, and is sued here only in her official capacity.

10. Defendant Letitia A. James is the Attorney General of the State of New York, and is sued here only in her official capacity.

11. Defendant Marie Therese Dominguez is the Acting Commissioner of the New York State Department of Transportation, and is sued here only in her official capacity.

12. Defendant Thomas P. DiNapoli is the Comptroller of the State of New York, and is sued here only in his official capacity.

13. Defendant the New York State Thruway Authority is a public-benefit corporation created by New York state law.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 (because the Nation's claims arise under federal law); 28 U.S.C. § 1362 (because this case is brought by an Indian nation and arises under federal law); and 28 U.S.C. §§ 2201–2202 (because the Nation is seeking relief under the Declaratory Judgment Act).

15. This Court has federal question jurisdiction because the Complaint alleges ongoing violations of the Nation's treaty and Reservation rights pursuant to federal law, including the Treaty of Canandaigua, art. II, 7 Stat. at 45, 25 U.S.C. § 311, and 25 U.S.C. § 323.

16. This Court has jurisdiction to grant prospective injunctive and declaratory relief against the named New York State officials under *Ex parte Young*, 209 U.S. 123 (1908), and the

Court's inherent equitable powers. This Court also has jurisdiction to grant relief against the New York State Thruway Authority as a corporation that is not an arm of the State and therefore not entitled to Eleventh Amendment immunity.

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because it is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.

## FACTUAL BACKGROUND AND ALLEGATIONS

A. **The Cayuga Nation and Its Reservation**

18. From time immemorial, the Cayuga Nation and its people have resided in what is now upstate central New York.

19. In 1794, the United States entered the Treaty of Canandaigua with the Cayuga Nation, and certain other Indian nations in New York, to resolve significant disputes that existed between the United States and those Indian nations. Treaty of Canandaigua, Preamble, 7 Stat. at 44.

20. In the Treaty of Canandaigua, the United States recognized a federal reservation for the Cayuga Nation comprising 64,015 acres—located within what today are Seneca County, New York (which is located within the federal Western District of New York) and Cayuga County, New York (located within the federal Northern District of New York)—and pledged that the "reservation[] shall remain theirs, until they choose to sell the same to the people of the United States, who have the right to purchase." Treaty of Canandaigua, art. II, 7 Stat. at 45.

21. The Treaty of Canandaigua further recognized that the lands reserved to the Cayuga Nation were for the Nation's "free use and enjoyment thereof." Treaty of Canandaigua, art. IV, 7 Stat. at 45.

22. In the years following the Treaty of Canandaigua, New York State claimed to enter into two treaties directly with the Cayuga Nation. In 1795, by the Treaty of Cayuga Ferry, the State claimed to acquire the Cayuga Nation's entire Reservation, with the exception of a three square-mile area on the eastern shore of Cayuga Lake, in exchange for a promise to pay the Nation $1,800 annually in perpetuity. In the 1807 Treaty with the Cayugas, the State claimed to purchase the Cayuga Nation's remaining three square-mile parcel for $4,800.

23. However, because these two treaties with the State of New York "indisputably violated the Non-Intercourse Act, and were never subsequently approved through the federal treaty-ratification procedures," as a matter of law they are void and never "had any effect on the legal status of the Cayuga reservation," which remains fully intact. *Cayuga Indian Nation of N.Y. v. Seneca Cnty.*, 260 F. Supp. 3d 290, 309–10 (W.D.N.Y. 2017) (collecting cases).

24. To this day, Congress has not disestablished the Nation's Reservation, nor authorized the sale of the Nation's reservation lands, *see generally id.* at 307-15 (collecting authorities), and "every federal court that has examined whether the Cayuga reservation was disestablished or diminished by Congress has answered that question in the negative." *Cayuga Indian Nation of N.Y. v. Gould*, 14 N.Y.3d 614, 639 (2010) (collecting cases).

25. The Nation's 64,015-acre Reservation as established by the Treaty of Canandaigua remains fully intact today.

**B.    Federal Law Regulating Rights-of-Way Across Indian Lands**

26. Because the Nation's Reservation persists, it is subject to federal statutes and regulations that govern Indian country. *See* 18 U.S.C. § 1151(a). Those federal statutes and regulations apply to all lands within the Nation's Reservation, except where Congress has provided otherwise. *See, e.g., United States v. Mazurie*, 419 U.S. 544, 554-55 (1975) (recognizing that

6

Congress possesses authority to regulate non-Indian conduct on non-Indian-owned lands within reservation boundaries).  As relevant here, those laws include the Indian Right-of-Way Act of 1948, 25 U.S.C. §§ 323–328 (the "Right-of-Way Act"), and the Act of Mar. 3, 1901, 25 U.S.C. § 311 (the "1901 Act").

27. The Right-of-Way Act empowers the Secretary of the Interior to "grant rights-of-way for all purposes, subject to such conditions as he may prescribe, over and across any lands now or hereinafter held in trust by the United States for individual Indians or Indian tribes, communities, bands, or nations, or any lands now or hereafter owned, subject to restrictions against alienation, by individual Indians or Indian tribes, communities, bands, or nations . . . and any other lands heretofore or hereafter acquired or set aside for the use and benefit of the Indians." 25 U.S.C. § 323.

28. The Right-of-Way Act is intended to "preserv[e] and protect[] . . . Indian interests." *S. Pac. Transp. Co. v. Watt*, 700 F.2d 550, 554 (9th Cir. 1983).  The Right-of-Way Act became operative on March 6, 1948, 30 days after it was approved on February 5, 1948.  *See* 62 Stat. 18.

29. The Nation's Reservation lands are lands "set aside for the use and benefit of Indians" within the meaning of 25 U.S.C. § 323.  *See Oneida Indian Nation of N.Y. v. City of Sherrill*, 337 F.3d 139, 155 (2d Cir. 2003) (explaining that "reservation land … by its nature was set aside by Congress for Indian use"), *rev'd on other grounds*, *City of Sherrill v. Oneida Indian Nation of N.Y.*, 544 U.S. 197 (2005).  That is true of the Reservation lands on which the Thruway is located.  *See* 18 U.S.C. § 1151(a) (providing that "Indian country" includes "*all* lands within the limits of any Indian reservation under the jurisdiction of the United States Government, *notwithstanding the issuance of any patent*, and, *including rights-of-way running through the reservation*" (emphases added)).

7

30. Under the Right-of-Way Act, "[n]o grant of a right-of-way shall be made without the payment of such compensation as the Secretary of the Interior shall determine to be just." 25 U.S.C. § 325.

31. Moreover, regulations under the Right-of-Way Act provide: "If an individual or entity takes possession of, or uses, Indian land or BIA land without a right-of-way and a right-of-way is required, the unauthorized possession or use is a trespass" and "[t]he Indian landowners may pursue any available remedies under applicable law." 25 C.F.R. § 169.413.

32. State highways within Indian reservations are also governed by the 1901 Act. Similar to the Right-of-Way Act, the 1901 Act provides that "[t]he Secretary of the Interior is authorized to grant permission, upon compliance with such requirements as he may deem necessary, to the proper State or local authorities for the opening and establishment of public highways, in accordance with the laws of the State or Territory in which the lands are situated, through any Indian reservation or through any lands which have been allotted in severalty to any individual Indian under any laws or treaties but which have not been conveyed to the allottee with full power of alienation." 25 U.S.C. § 311.

33. The 1901 Act applies to the Nation's Reservation—including the Reservation lands on which the Thruway is located—because the 1901 Act encompasses "any Indian reservation." *Id.*; *see* 18 U.S.C. § 1151(a) (Indian reservation generally defined to include patented lands and rights-of-way).

34. As under the Right-of-Way Act, under the 1901 Act a State may not construct and operate a highway within an Indian reservation without first seeking the permission of the United States. *See Confederated Salish & Kootenai Tribes v. Lake Cnty. Bd. of Comm'rs*, 454 F. Supp. 3d 957, 970 (D. Mont. 2020).

**C.     The New York State Thruway**

35.     Officially named the "Governor Thomas E. Dewey Thruway," and unofficially known as the New York State Thruway, the Thruway is a system of controlled-access highways spanning approximately 570 miles within the State of New York, operated by the New York State Thruway Authority.

36.     The New York State Thruway Authority, a public corporation, was created in 1950 to construct, improve, maintain, and operate the Thruway.  N.Y. Pub. Auth. Law § 353.

37.     The first section of the Thruway, between Utica and Rochester, opened on June 24, 1954, while the remainder of the mainline was opened in 1955.  By December 23, 1960, all 559 miles of the original Thruway system were open.

38.     The Thruway's 496-mile mainline is a toll road that runs from the New York City line at Yonkers, in Westchester County, New York, to the Pennsylvania state line at Ripley in Chautauqua County, New York by way of Interstate 90 (I-90) and Interstate 87 (I-87) through the Albany, Syracuse, Rochester, and Buffalo areas.

39.     A portion of the Thruway's mainline, Interstate 90, passes over and across the Nation's Reservation near the northern end of Cayuga Lake.

**D.     Failure to Obtain a Right-of-Way Under the Indian Right-of-Way Act**

40.     Because the Thruway was constructed after March 6, 1948, it is subject to the application of the Right-of-Way Act and the 1901 Act.

41.     Under the two Acts, the Secretary of the Interior must grant a right-of-way for the portion of the Thruway that passes over and across the Nation's Reservation in order for the Thruway to comply with federal law.  25 U.S.C. §§ 311, 323.

42. New York State government officials have never sought or obtained from the Secretary of the Interior a right-of-way over and across the Nation's Reservation for the Thruway, as required by the Right-of-Way Act and the 1901 Act.  Nor has the Secretary of the Interior ever otherwise granted such a right-of-way under the Acts.

43. Defendants Hochul, James, and Dominguez have authority separately and collectively to seek and obtain a right-of-way for the State of New York and have failed to do so for the portion of the Nation's Reservation where the Thruway is located.

44. The executive power of New York State is vested in Governor Hochul, who, by virtue of this executive power, has the constitutional authority to seek a valid right-of-way for the State of New York for that portion of the Thruway that traverses the Nation's Reservation.

45. Attorney General James likewise has the authority to seek a valid right-of-way as she is authorized to participate in any "action or proceeding affecting the property or interests of the state," N.Y. Exec. Law § 63, and she has not done so for the portion of the Thruway that traverses the Nation's Reservation.

46. Similarly, Acting Commissioner Dominguez has "the power to acquire by grant or purchase" interests in land necessary for the lawful operation of the Thruway, *see* N.Y. Highway Law § 347, and she has not sought a right-of-way for the portion of the Thruway that traverses the Nation's Reservation.

47. Finally, the New York State Thruway Authority has the power to seek a valid right-of-way for the portion of the Thruway that traverses the Nation's Reservation, N.Y. Pub. Auth. Law § 354, and has not done so.

### E.   Collection of Tolls for the New York State Thruway

48.   From its inception through less than a decade ago, the Thruway utilized a combination of barrier-based and ticket-based tolling systems.  Since November 14, 2020, the entire Thruway has utilized an all-electronic open road tolling system, with tolls collected by either E-ZPass (an electronic toll collection system used for toll roads, toll bridges, and toll tunnels) or Tolls by Mail (an automatic number-plate recognition technology).

49.   With the exception of the Garden State Parkway Connector and the Cross-Westchester Expressway, all portions of the Thruway are tolled in some capacity.

50.   Thruway tolls are collected by the New York State Thruway Authority and are "paid to the comptroller as agent of the authority."  N.Y. Pub. Auth. Law § 364.

51.   Since the first section of the Thruway opened, motorists have continuously entered the Nation's Reservation on the Thruway, and the New York State Thruway Authority has collected and remitted to the Comptroller tolls, some of which are derived in connection with the portion of the Thruway that passes over and across the Nation's Reservation, in violation of federal law.

52.   The portion of tolls collected for the Thruway that are attributable to the right to enter and cross over the Nation's Reservation are obtained in violation of the Nation's federally-protected rights and in violation of federal law.  And these tolls, as with all tolls collected by the New York State Thruway Authority, are "paid to the comptroller as agent of the authority."  N.Y. Pub. Auth. Law § 364.

53.   Since the time the Thruway was established, through this day, no person has ever remitted to the Nation any monies collected for Thruway tolls.

**CLAIMS FOR RELIEF**

**COUNT I: INJUNCTION**
**(Against all Defendants except Defendant DiNapoli)**

54. The Nation repeats and realleges the allegations contained in the preceding paragraphs 1-53 as if specifically set forth herein.

55. The Nation is entitled to an injunction to enforce federal law protecting its Reservation from continuing unauthorized use for the purpose of operating a toll road without a valid right-of-way approved by the Secretary of the Interior.

56. The Nation does not seek to eject anyone from the portion of the Thruway that traverses the Nation's Reservation, but seeks only to prevent further violation of its right that a valid right-of-way be obtained for such usage.

57. The continued operation of the Thruway over and across the Nation's Reservation by Defendants (except for Comptroller DiNapoli) without a valid right-of-way violates the Treaty of Canandaigua and federal law that comprehensively regulates rights-of-way across Indian lands such as the Reservation.  Treaty of Canandaigua art. II, 7 Stat. at 45; 25 U.S.C. §§ 311, 323; 25 C.F.R. Ch. I, Subch. H, Pt. 169.

58. The Nation is entitled to an injunction requiring that all Defendants (except for Comptroller DiNapoli) obtain a valid right-of-way for the portion of the Nation's Reservation on which the Thruway is situated, so as to bring continued public use and benefit from the Nation's Reservation into compliance with federal law on terms that will in the future equitably compensate the Nation pro rata for the future use of its Reservation.

59. In the alternative, the Nation is entitled to an order enjoining the Defendants (except for Comptroller DiNapoli) from collecting tolls for the portion of the Nation's Reservation on which the Thruway is situated without first obtaining a valid right-of-way.

60.	The Nation is suffering and will continue to suffer irreparable harm without injunctive relief because its Reservation lands will continue to be invaded without authorization. The Nation lacks an adequate remedy at law, and therefore an injunction is necessary to remedy the Nation's injuries.

61.	The balance of equities favors the Nation, as the Defendants will not suffer any legally cognizable harm from an injunction enforcing federal law, while the Nation will suffer irreparable harm in the absence of such an injunction.

62.	An injunction is in the public interest because compliance with federal law governing the conveyance of rights-of-way over Indian lands is in the public interest.

## COUNT II: INJUNCTION
### (Against Defendant DiNapoli)

63.	The Nation repeats and realleges the allegations contained in paragraphs 1-53 as if specifically set forth herein.

64.	The Nation is entitled to an injunction requiring the Comptroller of the State of New York to segregate and hold in escrow any future toll monies collected on the Thruway that are fairly attributable to the portion of the Thruway operated in violation of the Nation's federally-protected rights until such time as Defendants obtain a valid right-of-way.

65.	The Nation is suffering and will continue to suffer irreparable harm without injunctive relief because its Reservation lands will continue to be invaded without authorization. The Nation lacks an adequate remedy at law, and therefore an injunction is necessary to remedy the Nation's injuries.

66.	The balance of equities favors the Nation as Defendants will not suffer any legally cognizable harm from an injunction enforcing federal law, while the Nation will suffer irreparable harm in the absence of such an injunction.

67. An injunction is in the public interest because compliance with federal law governing the conveyance of rights-of-way over Indian lands is in the public interest.

### COUNT III: DECLARATORY JUDGMENT
### (Against all Defendants except DiNapoli)

68. The Nation repeats and realleges the allegations contained in paragraphs 1-53 as if specifically set forth herein.

69. The Nation seeks and is entitled to a declaration that Defendants (other than Comptroller DiNapoli) are violating federal law by not obtaining a valid right-of-way for the portion of the Thruway running over and across the Nation's Reservation, and that some of the toll monies being collected for the Thruway and being deposited with the Comptroller on a continuing basis are derived from this violation of federal law.

70. The Nation seeks and is entitled to further necessary or proper relief pursuant to such a declaration, as the Court may see fit.

### RELIEF REQUESTED

**WHEREFORE**, in accordance with the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2022, and general principles of equity, the Nation respectfully seeks:

A. An injunction requiring that the Defendants (except for the Comptroller) obtain a valid right-of-way from the Secretary of the Interior for the portion of the Nation's Reservation on which the Thruway is situated, so as to bring continued public use of, and public benefit from, those Indian lands into compliance with federal law on terms that will in the future equitably compensate the Nation pro rata for future use of its Reservation; or, in the alternative, an order enjoining the Defendants (except for the Comptroller) from collecting tolls for the portion of the Nation's

      Reservation on which the Thruway is situated without first obtaining a valid right-of-way;

B.    An injunction requiring the Comptroller of the State of New York to segregate and hold in escrow all future toll monies collected on the Thruway that are fairly attributable to the portion of the Thruway operated in violation of the Nation's federally-protected rights until the other Defendants obtain a valid right-of-way;

C.    A declaration that Defendants (other than the Comptroller) are violating federal law by not obtaining a valid right-of-way for the portion of the Thruway that passes over and across the Nation's Reservation, and that some of the funds being collected by the Thruway and deposited with the Comptroller on a continuing basis are derived from this violation of federal law;

D.    Such further necessary or proper relief as the Court may see fit to grant in conjunction with a declaratory judgment;

E.    All costs and fees allowed by law; and

F.    Such other and additional relief as the Court deems just and proper.

Dated: December 11, 2023               **JENNER & BLOCK, LLP**

                                        By:    */s/ Jacob Alderdice*
                                              Jacob Alderdice
                                              David W. DeBruin
                                              (application for *pro hac vice* admission forthcoming)
                                              Leonard R. Powell
                                              (application for *pro hac vice* admission forthcoming)
                                              Jenner & Block, LLP
                                              1099 New York Avenue, N.W.
                                              Washington, D.C. 20001
                                              Tel.: (202) 639-6015
                                              jalderdice@jenner.com
                                              ddebruin@jenner.com

                                              *Attorneys for Plaintiff Cayuga Nation*